IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAYMOND DADI,<br><br>　　　　*Plaintiff,*<br><br>vs.<br><br>WARDEN BOBBY THOMPSON,<br>SOUTH TEXAS DETENTION FACILITY<br>(GEO); SYLVESTER M. ORTEGA,<br>ACTING FIELD OFFICE DIRECTOR,<br>SAN ANTONIO FIELD OFFICE, U.S.<br>DEPARTMENT OF HOMELAND<br>SECURITY, IMMIGRATION AND<br>CUSTOMS ENFORCEMENT,<br>ENFORCEMENT AND REMOVAL<br>OPERATIONS; ACTING SECRETARY<br>MARKWAYNE MULLIN, U.S.<br>DEPARTMENT OF HOMELAND<br>SECURITY; AND TODD BLANCHE,<br>ACTING UNITED STATES ATTORNEY<br>GENERAL;<br><br>　　　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-26-CV-02646-FB |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Petition for Writ of Habeas Corpus ("the Petition") filed by Petitioner Raymond Dadi [#1]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#5]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Petition be **GRANTED**.

1

## I.  Jurisdiction

This Court has jurisdiction over the Petition because Petitioner challenges the constitutionality of his continued detention and not the final order of removal underlying his detention.  The Real ID Act divests federal courts of jurisdiction to consider challenges to removal orders, and federal courts lack jurisdiction to review discretionary decisions of the Attorney General.  *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(5)).  Federal courts have jurisdiction, however, to adjudicate claims challenging the constitutionality of an alien's continued detention.  *See Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 776 (W.D. Tex. 2006) (citing *Gul v. Rozos*, 163 F. App'x 317, 2006 WL 140540, at *1 (5th Cir. 2006)).

## II.  Background

Petitioner filed his Petition for Writ of Habeas Corpus on April 21, 2026, asking this Court to order his immediate release while he awaits his removal to Saudi Arabia or Iran. Respondents have filed a response in opposition to Petitioner's habeas corpus petition, and Petitioner has filed a reply.  The undersigned held an evidentiary hearing on June 11, 2026, prior to which the parties submitted evidence.  The matter is ripe for the Court's review.

The relevant, undisputed facts in this case are established by the record and the representations of counsel at the evidentiary hearing.  Petitioner Raymond Dadi entered the United States on September 25, 1984, on a B-2 nonimmigrant visa. (Arredondo Decl. [#11-1], at ¶ 4.)  The visa was valid until December 23, 1984.  (*Id.*)  Petitioner married a U.S. citizen on June 23, 1986, and adjusted status to conditional residency thereafter. (*Id.* at ¶ 5.)  Petitioner's conditional resident status was terminated on March 4, 1989, and he was ordered removed *in absentia* by an immigration judge in August 1990.  (*Id*.)  Petitioner obtained a California birth

certificate (a "court order delayed registration of birth") on January 8, 1990, claiming that he was born in the U.S. and taken to Iran by his mother when he was four months old.  (*Id.* at ¶ 6.)

Petitioner was apprehended by U.S. Immigration and Customs Enforcement ("ICE") in May 1991, but bonded out of custody in June 1991 after filing a motion to reopen his deportation proceedings.  (*Id.* at ¶ 9.)  Later that month, an immigration judge granted his motion to reopen proceedings to present evidence that he was a U.S. citizen.  (*Id.*)  In December 1991, Petitioner was convicted of Unlawful Procurement of U.S. Citizenship.  (*Id.* at ¶ 10.)  His deportation proceedings were terminated the same month to allow him to serve his criminal sentence.  (*Id.*)  Petitioner married a different U.S. citizen by proxy in January 1992 while serving his six-month sentence for Unlawful Procurement and applied to adjust status based on this marriage.  (*Id.* at ¶ 11.)  In March 1993, an immigration judge ordered Petitioner removed to Iran after a merits hearing.  (*Id.*)  Petitioner appealed the order of removal in June 1993, and the BIA denied the appeal in December 1997. (*Id.* at ¶ 12.)

In November 1998, Petitioner filed a motion to reopen his immigration proceedings to change the designated country of removal in his removal order.  (*Id.* at ¶ 15.)  On January 22, 1999, an immigration judge ordered Petitioner removed to Saudi Arabia, listing Iran as an alternate country of removal. (*Id.*)  In November 2004, Petitioner filed a *pro se* habeas petition challenging his removal order on the basis of his claimed U.S. citizenship.  (*Id.* at ¶ 18.)  The petition was denied and dismissed for lack of jurisdiction in January 2005.  (*Id.*)  Petitioner filed another motion to reopen his immigration proceedings in September 2025 based on evidence demonstrating U.S. citizenship.  (*Id.* at ¶ 19.)  This motion to reopen was denied by an immigration judge in October 2025.  (*Id.*)

Petitioner was taken into custody at the South Texas ICE Processing Center in Pearsall, Texas, on September 20, 2025, where he remains detained. (*Id.* at ¶ 20.) Since then, a travel document request has been submitted to Iran on Petitioner's behalf in mid-November 2025, returned to ICE for edits and corrections in early December 2025, and resubmitted to a Detention and Deportation Officer for review in mid-January 2026. (*Id.* at ¶¶ 23-26.) ICE has also redetermined Petitioner's custody. A 90-day Post Order Custody Review ("POCR") notice was served on Petitioner on March 8, 2026. (*Id.* at ¶ 29.) The POCR resulted in a decision to continue detention based on a finding that Petitioner is a flight risk. (*Id.*)

On March 19, 2026, ICE contacted the Iranian Consulate to schedule an interview with petitioner. (*Id.* at ¶ 31.) The Iranian Consulate interviewed Petitioner by telephone on March 29, 2026. (*Id.* at ¶ 32.) At the time that Deportation Officer Arrendondo's declaration was submitted (May 11), ICE was "awaiting travel documents" for Petitioner. (*Id.* at ¶ 34.) During the live evidentiary hearing held on June 11, 2026, counsel for Respondents informed the Court that no circumstances had changed since the declaration was submitted. According to the declaration, ICE "intends to place Petitioner on a removal flight" to Iran "as soon as practicable." (*Id.* at ¶ 35.) ICE is also "actively monitoring for third countries" to which Petitioner may be removed. (*Id.* at ¶ 36.)

As of the time of the writing of this Report and Recommendation, Petitioner remains in ICE custody. In the seven months since Petitioner was detained in late September 2025, there has been no progress by Respondents in obtaining travel documents for Petitioner for removal to Iran or to any other country. Respondents conceded during the hearing that they do not possess Petitioner's Iranian passport or birth certificate. Iran requires an Iranian passport or birth certificate to issue travel documents, and Respondents do not dispute that Petitioner's removal to

Iran is contingent upon Iran's approval of the travel documents request, which is further complicated by the ongoing military hostilities between Iran and the United States. Furthermore, Respondents conceded that they are not aware of any currently scheduled removals to Iran. Respondents finally conceded that no travel document requests have been submitted on Petitioner's behalf to Saudi Arabia or any other country, nor is there any schedule in place for Petitioner's removal.

### III. Analysis

Petitioner argues that his prolonged detention following the entry of a final order of removal against him violates his Fifth Amendment substantive and procedural due process rights and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[1] Petitioner asserts that his removal is not foreseeable because he does not have an Iranian birth certificate or passport and, as a result, the Iranian Consulate has indicated it will not issue him travel documents. Respondents argue that Petitioner's detention is mandatory until his removal pursuant to 8 U.S.C. § 1231(a)(6). They further argue that Petitioner has failed to meet his burden under *Zadvydas* to show there is no significant likelihood of his removal in the reasonably foreseeable future. The District Court should find that Petitioner is entitled to relief on his substantive due process claim under *Zadvydas*.

In *Zadvydas*, the Supreme Court limited detention beyond the initial 90-day removal period to a period "reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 689. The Court held that detention for six months is "presumptively

---

[1] Petitioner further argues that Respondents have failed to provide a neutral decision-maker to review his continued custody in violation of his right to procedural due process under the Fifth Amendment. Because this Report and Recommendation concludes that Petitioner is entitled to release based on his *Zadvydas* claim, this Report and Recommendation does not reach his procedural due process claim.

reasonable," but beyond six months, if removal is no longer reasonably foreseeable, continued detention is not warranted. *Id.* at 701. Under *Zadvydas* and the regulations implementing it, if a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; 8 C.F.R. § 241.13(a). If a noncitizen is not likely to be removed in the reasonably foreseeable future, the noncitizen must be released unless continued detention is justified by one of the "special circumstances" set forth in 8 C.F.R. § 241.14. *Id.* § 241.13(e)(6).

The burden of demonstrating there is no significant likelihood of removal generally rests with the noncitizen. 533 U.S. at 701. The undersigned acknowledges that District Courts in the Fifth Circuit have placed the burden on the Government to demonstrate that removal is likely in the reasonably foreseeable future where, as here, Petitioner was previously released from ICE custody pursuant to an order of supervision. (Order of Supervision [#8-1], at 24.) *See, e.g., Medellin Martinez v. Bondi, et al.*, No. SA-25-CV-1319-OLG, at n.5 (W.D. Tex. Nov. 21, 2025) (citing C.F.R. §§ 241.4, 241.13; *Escalante v. Noem*, No. 25-cv-182-MJT, 2025 WL 2206113, at *3–4 (E.D. Tex. Aug. 2, 2025); *Balouch v. Bondi*, No. 25-cv-216-MJT, 2025 WL 2871914, at *2–3 (E.D. Tex. Oct. 9, 2025)). Irrespective of whether the initial burden is placed on Petitioner, he prevails on his *Zadvydas* claim for the following reasons.

Petitioner contends there is no significant likelihood of his removal because he does not possess the identity documents that Iran requires for removal to that country. This Court has joined district courts outside the Fifth Circuit in granting habeas relief to petitioners who lacked original Iranian identification documents required to process a travel document request for removal to that country. *Abbasi-Jogi v. Ortega*, SA-25-CV-1018-FB-ESC (W.D. Tex. Jan. 12, 2026), *report and recommendation adopted*, No. SA-25-CV-1018-FB, 2026 WL 852202 (W.D.

Tex. Jan. 28, 2026); *Kamyab v. Bondi*, No. C25-389RSL, 2025 WL 2917522, at *3 (W.D. Wash. Oct. 14, 2025); *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *2 (W.D. Okla. Oct. 15, 2025). During the evidentiary hearing, Respondents confirmed that ICE does not possess originals or copies of an Iranian passport or birth certificate belonging to Petitioner. Again, Iran requires an Iranian passport or birth certificate to issue travel documents, and Respondents do not dispute that Petitioner's removal is contingent upon Iran's approval of the travel document request.

Like the *Zadvydas* petitioners for whom ICE was unable to secure travel documents required for their removal, Petitioner is therefore faced with "potentially permanent" detention. 533 U.S. at 691. Petitioner has shown there is no reasonable likelihood of his removal in the foreseeable future due to his lack of Iranian identity documents required to obtain travel documents for his removal to Iran, and Respondents have not provided evidence to rebut that showing. *Id.* at 701. Respondents have conceded they are not aware of any currently scheduled removals to Iran, and that there is no schedule in place for Petitioner's removal. Respondents further conceded that no travel document requests have been submitted on Petitioner's behalf to Saudi Arabia or any other country. Even if ICE did have outstanding requests with third countries, that fact alone would be "insufficient to show that [his] removal is likely to occur in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Mont.*, 807 F. Supp. 3d 697, 707 (W.D. Tex. 2025); *Medellin Martinez v. Bondi, et al.*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025). Petitioner's continued detention therefore violates due process per the Supreme Court's decision in *Zadvydas*. Accordingly, the District Court should find that Petitioner is entitled to his requested relief and order his release.

### IV.  Conclusion and Recommendation

Based on the foregoing, the undersigned **recommends** that the Petition for Writ of Habeas Corpus filed by Petitioner Raymond Dadi [#1] be **GRANTED** and that Respondents be ordered to **RELEASE** Petitioner from their custody under conditions compliant with statutory requirements contained in 8 U.S.C. §1231(a)(3).

It is **FURTHER ORDERED** that the parties confer on conditions of release and submit joint proposed conditions for Petitioner's post-removal supervision that comply with the relevant statutory provisions and regulations within **seven days** to be considered by the District Court.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  **During the evidentiary hearing held before the undersigned on June 11, 2026, the parties agreed to shorten the deadline for filing objections to expedite resolution of this case, and specifically, that they would file any objections within seven days after being served a copy of the report and recommendation**.  Written objections to this report and recommendation must therefore be filed **within seven (7) days** after being served with a copy of same.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the

8

district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of June, 2026.


ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE